**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Essex Insurance Co., | No. CV 08-1402-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| W.G.S., LLC, et al. | |
| Defendants. | |

Pending before the Court is Plaintiff Essex Insurance Company's Motion for Summary Judgment (Doc. #40). For the reasons set out below, the Court will grant the Motion.

## I. BACKGROUND

Defendant Charles Nikias used to work for Defendant Brown & Recker, LLC; WGS D/B/A World Gym ("WGS") as a kickboxing instructor at the World Gym located on East Hayden Road in Scottsdale. WGS terminated Mr. Nikias some time in January of 2005. On February 7, 2005, Mr. Nikias came to the E. Hayden World Gym to return a box offering a limited time free membership to World Gym and to retrieve some property he used in teaching his classes. Mr. Nikias arrived at the gym around 7:00 p.m. While there, he encountered Mike Gilbert, an employee of WGS at the time. Mr. Nikias and Mr. Gilbert exchanged harsh words in the presence of Rick Mesa, a supervisor at the gym.

Shortly thereafter, Mr. Nikias and Mr. Gilbert moved their argument outside of the gym. The parties dispute the circumstances of the fight that followed, including which man instigated the physical altercation. What is undisputed, however, is that Mr. Nikias suffered multiple facial fractures, which required surgery.

As a result of the incident, Mr. Nikias filed a lawsuit against WGS, Mr. Gilbert, and Mr. Mesa on August 8, 2005 in Maricopa County Superior Court. WGS, Mr. Gilbert, and Mr. Mesa all made demands on Plaintiff Essex Insurance Company ("Essex") to defend and provide coverage in the case. Essex had issued a commercial liability policy to WGS.

Essex originally agreed to defend WGS, Mr. Gilbert, and Mr. Mesa under a reservation of rights. Essex thereafter withdrew its reservation of rights with regard to WGS and agreed to defend WGS without reservation. Essex refused to withdraw its reservation of rights as to Mr. Gilbert and Mr. Mesa. Because of that refusal, Mr. Gilbert and Mr. Mesa entered into *Morris* agreements with Mr. Nikias. The *Morris* agreements resulted in Mr. Nikias taking $400,000 judgments against the individual defendants in return for his agreement not to execute against them. Essex filed a suit in this Court seeking a declaration that the policy issued to WGS did not provide coverage to Mr. Gilbert or Mr. Mesa for Mr. Nikias's underlying claims. Essex prevailed in that case at the summary judgment stage.

On January 17, 2008, a few days before the underlying trial against WGS was set to begin, Mr. Nikias made a settlement proposal to WGS whereby WGS would stipulate to a judgment against it and transfer to Mr. Nikias all of its rights against Essex in exchange for Mr. Nikias's covenant not to execute on the judgment against WGS. On January 18, 2008, Essex objected to the settlement proposal and refused to give its consent to the agreement. Essex advised WGS that by entering into the agreement, WGS would breach the policy's cooperation clause, among others, and void coverage. WGS nonetheless accepted the settlement proposal and executed a settlement agreement with Mr. Nikias.

Essex filed this case on July 29, 2008, seeking a declaration that WGS had voided its coverage under the policy by entering into the settlement agreement with Mr. Nikias. Essex

named WGS and Mr. Nikias as Defendants. WGS has never answered or otherwise defended in this case.

Essex moved for default judgment against WGS on September 19, 2009. The Court denied the Motion on March 23, 2009, preferring to resolve the ultimate issue of coverage at the same time as to all Defendants. Essex filed the pending Motion for Summary Judgment on August 10, 2009.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. ANALYSIS AND CONCLUSION

### A. Duties of Cooperation and Equal Consideration

Essex argues the Court should grant its Motion for Summary Judgment because WGS breached the duty of cooperation and thereby voided coverage under the policy by settling with Mr. Nikias without Essex's permission. The policy that Essex issued to WGS contains a so-called duty of cooperation clause. The clause provides that in the event of a claim or suit the insured, WGS, must "Cooperate with [Essex] in the investigation or settlement of the claim or defense against the 'suit': and . . . No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (Plaintiff's Statement of Facts, Doc. #41, ¶85.)

A cooperation clause like the one above protects an "insurer's right to a fair adjudication of the insured's liability and to prevent collusion between the insured and the injured person." *Arizona Prop. and Cas. Ins. Guar. Fund v. Helme*, 753 P.2d 451, 458 (Ariz. banc 1987). Ordinarily, an insured's breach of the cooperation clause relieves an insurer, if prejudiced by the breach, from performing under the insurance contract. *Id*. at 458-59.

Here, WGS breached the policy's cooperation clause by entering into a settlement with Mr. Nikias without Essex's consent. But that breach might be excused to an extent if Essex also breached one of its duties to WGS. *Id*. at 459. Insurers generally owe two express duties and one implied duty to insureds. *Id*. The express duties are the duty to indemnify and the duty to defend, and the implied duty is the duty to treat settlement proposals with equal consideration. *Id*. If Essex breached one of those duties, then WGS was entitled to reach a reasonable settlement with Mr. Nikias without Essex's consent.

Mr. Nikias argues that Essex breached its duty to give equal consideration to WGS's interests with regard to settlement. The duty of equal consideration arises only if a conflict between the insurer and the insured exists. *Fulton v. Woodford*, 545 P.2d 979, 984 (Ariz. Ct. App. 1976). A conflict arises if the insurer denies coverage or if it defends an insured under a reservation of rights. *Id*. at 982; *State Farm Mut. Auto. Ins. Co. v. Peaton*, 812 P.2d 1002,

1010 (Ariz. Ct. App. 1990). A conflict also exists if the insurer refuses to accept a settlement offer that is within the policy limits. *Peaton*, 812 P.2d at 1014. Even if no firm settlement demand has been made, a conflict may arise when there is a high potential of claimant recovery and a high potential of damages exceeding the policy limits. *Id.*; *Fulton*, 545 P.2d at 984.

Here, Essex did not deny coverage and eventually defended WGS without a reservation of rights. But Mr. Nikias claims that Essex violated the duty of equal consideration when it rejected WGS's demand that Essex settle Mr. Nikias's claims against WGS for $65,000. Essex claims that WGS never demanded that it settle the case for $65,000.

In his statement of facts, Defendant Nikias cites to Mr. Elardo's Deposition and two letters for the proposition that Essex refused to lift the policy limits and defend and refused WGS's demand to settle for $65,000. (DSOF, Doc. #45, ¶5). The exhibits cited certainly support Mr. Nikias's contention that WGS demanded that Essex lift the policy limits and defend. The exhibits do not, however, demonstrate that WGS demanded Essex settle for $65,000 a few days before trial.

But Essex has not cited to any Arizona cases that would require WGS to make a demand on Essex to settle. It might have been better practice for WGS to make such a demand, but nothing suggests that WGS had to do so in order for a conflict to arise. When an insurer refuses a settlement offer within policy limits, a conflict between the insurer and insured arises and the insured must give equal consideration to the insured's interests. *Peaton*, 812 P.2d at 1014. Here, Essex does not dispute that it knew about Mr. Nikias's offer to settle within policy limits made days before trial.[1] The lack of a demand from WGS to Essex seems to have no legal significance. Because Essex rejected a settlement offer witin

---

[1]The Exhibits demonstrate that Mr. Elardo knew of and rejected the $65,000 settlement offer, and Mr. Elardo was acting as Essex's agent.

- 5 -

policy limits, a conflict of interest arose, and Essex owed WGS a duty of equal consideration.

### B. Breach of Duty of Equal Consideration

Although the Court has found that Essex owed WGS a duty of equal consideration, the Court also finds that Mr. Nikias has not made the requisite showing that Essex violated that duty. The test for deciding whether an insurer has upheld its duty by giving equal consideration to an insured's interests is "whether a prudent insurer without policy limits would have accepted the settlement offer. The insurer must evaluate a claim objectively and as though it alone would be responsible for the payment of any judgment rendered." *Acosta v. Phoenix Indem. Ins. Co.*, 153 P.3d 401, 404 (Ariz. Ct. App. 2007)(internal citations omitted).

In determining whether an insurer has breached its duty by failing to give equal consideration to an insured's interest in settling a third-party case, the Court considers the following factors, if applicable:

> (1) the strength of the injured claimant's case on the issues of liability and damages;
> (2) attempts by the insurer to induce the insured to contribute to a settlement;
> (3) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured;
> (4) the insurer's rejection of advice of its own attorney or agent;
> (5) failure of the insurer to inform the insured of a compromise offer;
> (6) the amount of financial risk to which each party is exposed in the event of a refusal to settle;
> (7) the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and
> (8) any other factors tending to establish or negate bad faith on the part of the insurer.

*Pruett v. Farmers Ins. Co. of Arizona*, 857 P.2d 1301, 1305-06 (Ariz. Ct. App. 1993).

Mr. Nikias has not made a showing on any of these factors. For instance, Mr. Nikias has not argued that Essex failed to properly investigate the claim or rejected the advice of its own attorney. Meanwhile, in its Motion, Essex has introduced strong evidence that Mr. Nikias did not have a high likelihood of success at trial and uncontroverted evidence that his

- 6 -

chances of recovering more than the policy limits were slim to none.

With regard to the first factor, Essex argues that WGS had several valid defenses to Mr. Nikias's underlying suit, including: lack of duty to protect Mr. Nikias; lack of duty to control Mr. Gilbert's actions; lack of respondeat superior liability because the alleged assault was outside the scope of employment of both Mr. Gilbert and Mr. Mesa; and the possibility that Mr. Gilbert acted in self defense, as supported by the testimony of a neutral third-party observer of the incident. Mr. Nikias responds to those defenses, but does nothing to demonstrate that he more than likely would have prevailed on the issues and the ultimate question of liability.

Essex also offers the opinions of its expert, Mr. Fleischman, and WGS's own defense attorney, Mr. Elardo, on the weakness of Mr. Nikias's case. Essex retained Mr. Fleischman, an attorney, to give his opinion regarding the validity of the settlement agreement between Mr. Nikias and WGS. Mr. Fleischman opines that "the overwhelming likelihood is that the policy limit would never have been met in this case . . . ." (Doc. #40-1, p.1). Giving Mr. Nikias every benefit of the doubt, Mr. Fleischman assigned a maximum value of $75,000 to the case. (Doc. #40-1, p. 4).

In his pretrial report of August 14, 2007, after extensive discovery, Mr. Elardo writes that WGS has a 90% chance of recovering a defense verdict against Mr. Nikias. (Doc. #48-1 p.2). He further asserts that the best Mr. Nikias could possibly hope for in damages is $60,000, and that the case has a settlement value of only $0 to $5,000. (Doc. #48-1, pp.7 &9). As late as January 23, 2008, Mr. Elardo opines that Mr. Nikias has only a 20% chance of prevailing against WGS at trial. (Doc. #46-5, Ex. F to DSOF).

In addition to the opinions of Mr. Fleischman and Mr. Elardo, Essex has an expert opinion negating Mr. Nikias's claimed amount of future medical costs. Essex also has correctly pointed out the difficulty Mr. Nikias would have in recovering any lost wages given the circumstances of his termination.

While Mr. Nikias has made some arguments on the liability issues, although he never

offers controverting evidence regarding his probable chances of success, he has done nothing to refute Essex's contention that he could not have recovered a verdict greater than the $100,000 policy limit. The Court does not doubt the severity of Mr. Nikias's injuries. But he simply has not introduced any evidence that would create an issue of fact regarding his likelihood of recovering a verdict in excess of the policy limits.

In his Response to the Motion for Summary Judgment, Mr. Nikias argues that if Essex did not fear an excess verdict, then Essex would have agreed to lift the limits of the policy and defend. But the Court attaches zero legal significance in this case to Essex's decision not to lift the policy limits. Mr. Nikias's argument regarding Essex's failure to lift the policy limits is no substitute for controverting facts regarding his amount of damages.

Mr. Nikias did file a "Notice of Companion Case State Court Ruling" (Doc. #49) on January 6, 2010. The Notice informed the Court that Judge Rea of the Arizona Superior Court had found $80,000 to be a reasonable settlement amount for Mr. Nikias's claims against WGS. Judge Rea's determination belies any argument that a high probability of an excess verdict existed.

Because Mr. Nikias has done little to dispute Essex's arguments regarding his likelihood of success at trial and nothing to controvert Essex's claim that any verdict would not have exceeded $100,000, he has not met his burden. Mr. Nikias has not created an issue of fact as to whether an objective insurer without policy limits would have accepted the settlement offer. The Court therefore finds as a matter of law that Essex did not violate its duty of equal consideration. Mr. Nikias has not argued that Essex violated any duty other than the duty of equal consideration. Because Essex did not violate a duty to WGS, then WGS's violation of the cooperation clause is not excused and the policy provides no coverage.

For WGS's breach of the cooperation to be excused to the extent of the reasonableness of the settlement with Mr. Nikias, Essex must have breached one of its duties to WGS. Mr. Nikias has failed to demonstrate that Essex breached its duty to equally consider WGS's

settlement interests – the only duty allegedly breached. Because Mr. Nikias has not shown that Essex breached one of its duties to WGS, WGS's decision to settle with Mr. Nikias without Essex's consent and thereby breach the duty of cooperation voided coverage under the policy.

Accordingly,

IT IS ORDERED Granting Essex's Motion for Summary Judgment (Doc. #40). The Clerk shall enter Judgment for Plaintiff Essex against Defendant Mr. Nikias based upon the Court's ruling on the Motion for Summary Judgment.

IT IS FURTHER ORDERED Granting Default Judgment for Plaintiff Essex against Defendants Brown & Recker LLC and WGS.

IT IS FURTHER ORDERED that this Order disposes of this case in its entirety.

DATED this 1st day of March, 2010.

James A. Teilborg
United States District Judge