**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Essex Insurance Co., | No. CV 08-1402-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| W.G.S., LLC et al., | |
| Defendant. | |

Plaintiff Essex Insurance Co. ("Essex") moves this Court for an award of attorneys' fees and related expenses. (Doc. 57 Plaintiff's Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses); (Doc. 62 Plaintiff's Memorandum of Points and Authorities). Defendant Charles Nikias ("Nikias") responded. (Doc. 59 Defendant's Response); (Doc. 63 Defendant's Memorandum of Points and Authorities). Having considered the parties' pleadings, the Court now finds that Essex is entitled to reasonable attorneys' fees and expenses in the amount of $18,392.00.

**I.      Factual Background**

Defendant Nikias used to work for Defendant Brown & Recker, LLC; W.G.S. d/b/a World Gym (referred to collectively as "World Gym") as a kickboxing instructor at the World Gym located on East Hayden Road in Scottsdale. (Doc. 54 at 1). World Gym terminated Nikias in January of 2005. *Id.* On February 7, 2005, Nikias returned to the E. Hayden World Gym to retrieve some property he used in teaching his classes and he got into

1 a physical altercation with a World Gym employee. *Id.* at 1-2. As a result, Nikias suffered serious injuries. *Id.* at 2.

Essex had issued an insurance contract to World Gym. *Id.* Essex originally agreed to defend World Gym and the two individual employees against Nikias' claims with a reservation of rights. *Id.* Essex thereafter lifted its reservation of rights as to World Gym and agreed to defend World Gym without reservation. *Id.* Essex did not lift its reservation of rights as to the two individual employees. *Id.* Nikias entered into a settlement agreement with the two individual employees, but Essex sought a declaratory judgment from this Court saying that the insurance policy with World Gym did not cover these two individual employees. *Id.* Essex prevailed in that case. *Id.*

On January 17, 2008, a few days before Nikias' trial against World Gym was set to begin, Nikias made a settlement proposal to World Gym whereby World Gym would stipulate to a judgment against it and transfer to Nikias all of its rights against Essex in exchange for Nikias' covenant not to execute on the judgment against World Gym. *Id.* Essex objected to the settlement proposal and refused to give its consent to the agreement. *Id.* Essex advised World Gym that by entering into the agreement, World Gym would breach the insurance policy's cooperation clause, among other clauses, and void coverage. *Id.* The cooperation clause provides that in the event of a claim or suit the insured, World Gym, must "Cooperate with [Essex] in the investigation or settlement of the claim or defense against the 'suit': and . . . [n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Essex's] consent."[1] (Doc. 41, ¶85). World Gym nonetheless accepted the settlement proposal and executed a settlement agreement with Nikias. (Doc. 54 at 2).

On July 29, 2008, Essex filed a Complaint for Declaratory Judgment seeking to have

---

[1] The purpose of a cooperation clause in an insurance policy is to protect the "insurer's right to a fair adjudication of the insured's liability and to prevent collusion between the insured and the injured person." *Arizona Prop. and Cas. Ins. Guar. Fund v. Helme*, 753 P.2d 451, 458 (Ariz. 1987).

this Court find that World Gym breached the insurance policy by settling with Nikias and that, in light of this breach, Essex had no obligation to defend World Gym or pay damages or judgments rendered against it. (Doc. 1). The Court agreed and granted summary judgment to Essex. (Doc. 54). Essex now moves for an award of attorneys' fees and costs. (Doc. 57, Doc. 62).

## II. Legal Standard

Generally, federal courts follow state statutes allowing for the recovery of attorneys' fees. "In an action where a district court is exercising its subject matter jurisdiction over a state law claim, so long as 'state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorneys' fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *MRO Communications, Inc. v. AT & T Corp.*, 197 F.3d 1276, 1281 (9th Cir.1999) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (quoting 6 Moore's Federal Practice § 54.77[2] (2d ed.1974))). Accordingly, the Court will apply Arizona law to Essex's request for attorneys' fees.

## III. Discussion

Under Arizona law, "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). Courts have discretion to award attorneys' fees to the prevailing party based on six factors outlined by the Arizona Supreme Court in *Associated Indemnity Corp. v. Warner*. 694 P.2d 1181, 1184 (Ariz. 1985). If a court finds that an award of attorneys' fees is appropriate, it must then determine whether the amount of fees requested is reasonable. *See Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931 (Ariz. App. 1983). This Court's local rules provide thirteen factors under which courts assess the reasonableness of an attorneys' fees award. LRCiv 54.2.

In this case, there is no dispute that Essex is the successful party or that the case arises out of a contract dispute. The parties dispute whether this Court should, as a matter of discretion, grant Essex an attorneys' fees award. (Doc. 62 at 2-9); (Doc. 63 at 2-3); *see*

A.R.S. § 12-341.01(A) ("the court *may* award . . . reasonable attorney fees") (emphasis added). Nikias also asserts that the number of hours billed by Essex's counsel is unreasonable. (Doc. 63 at 6). The Court finds that: (1) an attorneys' fees award is appropriate in this case based on the *Associated Indemnity* factors; and (2) a fee award of $18,392.00 is reasonable.

### A. Appropriateness of Fee Award Under *Associated Indemnity* Factors

In *Associated Indemnity*, the Arizona Supreme Court announced six factors that courts should use to determine whether an award is appropriate:

> (1) whether the unsuccessful party's claim or defense was meritorious;
> (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving that result;
> (3) whether assessing fees against the unsuccessful party would cause extreme hardship;
> (4) whether the successful party prevailed with respect to all the relief sought;
> (5) whether the legal question was novel and whether such claim or defense has previously been adjudicated in this jurisdiction; and
> (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.

*Newberry Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1405-6 (9th Cir. 1996) (citing *Associated Indemnity Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985)). No single factor is determinative, and the Court must weigh all factors when determining whether to award attorneys' fees. *Wilcox v. Waldman*, 744 P.2d 444, 450 (Ariz. App. 1987); *see also Moedt v. Gen. Motors Corp.*, 60 P.3d 240, 246 (Ariz. App. 2000) ("The weight given to any one factor is within the Court's discretion"). When weighing the above factors, the party requesting attorneys' fees has the burden of proving entitlement. *Woerth v. City of Flagstaff*, 808 P.2d 297, 305 (Ariz. App. 1991).

Because the Court determines four of the factors weigh in Essex's favor and only two weighs in Nikias' favor, the Court finds that the *Associated Indemnity* factors weigh in favor of awarding attorneys' fees to Essex. Each *Associated Indemnity* factor is discussed in turn.

### 1. Whether Nikias' Claim Was Meritorious

Nikias' claim was not meritorious. The Court notes that "[a] claim can have merit, even if it does not succeed." *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 791 P.2d 1094,

1099 (Ariz. App. 1990). For example, in *Clark* the Arizona Court of Appeals found that a losing claim did have merit because the losing litigant had prevailed at both the trial court and the appeals court, only to be reversed by the Arizona Supreme Court. *Id.* Even the Arizona Supreme Court remarked that it "must choose . . . among two plausible statutory interpretations," urged by each party. *Scottsdale Mem'l Health Sys. v. Clark*, 759 P.2d 607, 615 (Ariz. 1988).

Here, Nikias succeeded on his argument that Essex owed World Gym a duty of equal consideration,[2] even though Nikias could not show that Essex breached this duty. (Doc. 54 at 5-6). Given that Nikias' succeeded on one of his legal arguments, the Court could find that his claim had some merit. *See Clark*, 791 P.2d at 1099. However, in the summary judgment Order, the Court found that Nikias had not established even one of the eight factors under which courts determine whether an insurer breached its duty to give its insured equal consideration when assessing settlement offers. (Doc. 54 at 6); *see also Pruett v. Farmers Ins. Co. of Ariz.*, 857 P.2d 1301, 1305-06 (Ariz. App. 1993). Despite the benefit of discovery, Nikias could not establish a single fact tending to show that Essex breached any duty it had under the insurance policy. This is distinguishable from *Clark*, where different courts grappled with two plausible statutory interpretations. *Clark*, 791 P.2d at 1099. As such, Nikias' claim was not meritorious. Therefore, this factor weighs in favor of awarding attorneys' fees to Essex.

### 2. Whether Litigation Could Have Been Avoided

This case probably could not have avoided litigation. Nor is the litigation that has occurred superfluous. Once World Gym chose to settle without Essex's blessing, Essex at all times maintained that it would not cover any of World Gym's liability because World

---

[2]Insurers are generally said to have an implied duty to give equal consideration to their own interests and to their insured's interests when faced with a settlement offer. *State Farm Mut. Auto. Ins. Co. v. Peaton*, 812 P.2d 1002, 1014 (Ariz. App. 1990). Even if no explicit settlement offer exists, the duty of equal consideration may be present where a potential settlement could exceed the insurance policy's payout limit. *Id.*

- 5 -

1  Gym breached its insurance policy. (Doc. 54 at 2-3). The Court found Essex was within its
2  right not to cover World Gym's liability. (*Id.*). Meanwhile, Nikias obtained the right to
3  indemnify Essex as part of his settlement agreement with World Gym. (*Id.* at 2). If Nikias
4  valued this right enough to accept it as settlement, it is likely that he would attempt to receive
5  a judgment against Essex. Therefore, neither party would have been willing to settle. Since
6  litigation could not have been avoided, this factor gives the Court no reason to depart from
7  the standard practice of letting the parties pay their own attorneys' fees. Therefore, this
8  factor weighs for Nikias and against awarding attorneys' fees to Essex.

### 3. Whether Award Would Cause Extreme Hardship

Nikias has not shown that awarding attorneys' fees to Essex would cause him extreme hardship. "[A]lthough the party requesting fees has the burden of proving his entitlement to an award of fees, the party asserting financial hardship has the burden of coming forward with prima facie evidence of financial hardship." *Woerth v. City of Flagstaff*, 808 P.2d 297, 305 (Ariz. App. 1990) (citing *Southwest Cotton Co. v. Ryan*, 199 P. 124, 129 (Ariz. 1921)). Unsworn and unproven assertions are not facts admissible in evidence; Plaintiffs are required to present specific facts by affidavit or testimony. *See id.*

Here, Nikias has provided the Court with only unsworn, unproven assertions that he "is in his 50's, has permanent injuries and is currently working two jobs . . . is barely able to make ends meet, and does not have sufficient funds to pay any attorneys' fees award." (Doc. 63 at 4). None of these assertions are in the form of evidence. Nor can the Court verify Nikias' claim of "future medical needs." (*Id.*). Furthermore, Nikias makes no mention of the value of his settlements with the two individual Defendants. (Doc. 54 at 2). Since Nikias has not come forth with prima facie evidence of extreme hardship, the Court finds that this factor weighs in favor of awarding attorneys' fees to Essex.

### 4. Whether Essex Prevailed on All Forms of Relief Sought

It is undisputed that Essex prevailed on all forms of relief sought. (Doc. 63 at 5); (Doc. 62 at 4). Therefore, this factor weighs heavily in favor of Essex.

### 5. Whether the Legal Question Was Novel

1 Nikias did not present a novel legal question. Nikias asserts that, "[a]t the time of this
2 Court's ruling, there was no case known to Defendant that included an offer to settle within
3 policy limits and a refusal by the insurance company to lift its policy limits and defend the
4 case." (Doc. 63 at 5). When an insurer refuses a settlement offer within its policy limits, a
5 conflict of interests arises between the insurer and the insured. *Peaton*, 812 P.2d at 1014.
6 In such a case, the insurer must give equal consideration to the insured's interests. *Id.* There
7 is a legal test, found in *Clearwater v. State Farm Mut. Auto. Ins. Co.*, that courts use to
8 determine whether an insurer breached a duty of equal consideration to its insured. 792 P.2d
9 719, 722 (Ariz. 1990) (citing *General Accident Fire & Life Assur. Corp. v. Little*, 443 P.2d
10 690, 694 (Ariz. 1968)). This test has been applied by prior Arizona courts. *See*, *e.g.*, *Pruett*,
11 857 P.2d at 1305-06.

The Court applied this test in its summary judgment Order. (Doc. 54). Although the application of this legal test to these facts is undoubtedly novel, the Court does not consider the legal question presented by this case to be novel. *See*, *e.g.*, *Pruett*, 857 P.2d at 1305-06; *Goldberg v. Pacific Indem Co.*, 2009 WL 1327528 (D. Ariz. 2009) (where "case certainly presented novel facts, but not necessarily novel legal theories," this factor weighs in favor of the prevailing party). Therefore, this factor weighs in favor of awarding attorneys' fees to Essex.

### 6. Whether the Award Would Discourage Other Valid Litigants

Awarding attorneys' fees in this type of case may discourage other valid litigants. Essex did not want World Gym to settle with Nikias precisely because it believed Nikias' claim against World Gym was not valid. (Doc. 54 at 7). Therefore, Essex argues, an attorneys' fees award would not discourage valid litigants. (Doc. 62 at 5). In the Court's summary judgment Order, the Court found that Nikias had not made a showing of any of the eight factors courts use to determine whether an insurer breached its duty of equal consideration. (Doc. 54 at 6); *see also Pruett*, 857 P.2d at 1305-06. Unlike Nikias, a valid litigant would consider whether they could prove these eight factors before bringing suit.

However, to prove most of these eight factors, litigants would require information that

is in the insurer's possession, or at least the insured's possession, and not in the injured litigant's possession.[3] It is entirely possible that the prospect of attorneys' fees would, prior to discovery, discourage a valid litigant from suing an insurer on behalf of the insured for breaching a duty of equal consideration. Although in this case Essex quickly realized that Nikias' claim was not valid, Nikias could not have known this conclusively until discovery. Therefore, this factor weighs slightly in favor of Nikias and against awarding attorneys' fees to Essex. But since it is one of two factors weighing in Nikias' favor, the Court still finds that an award of attorneys' fees to Essex is appropriate.

### B. Reasonableness of Fee Award

The Court may award the successful party in a contract action reasonable attorney's fees. A.R.S. § 12-341.01(a). When analyzing attorneys' fees for reasonableness, the Court must determine that: (1) the hourly billing rate is reasonable; and (2) the hours expended on the case are reasonable. *Schweiger*, 673 P.2d at 931-32. This Court's Local Rule lists 12 factors that courts should consider when determining whether the amount of attorneys' fees is reasonable. LRCiv 54.2(c)(3). These factors are:

> (A) The time and labor required by counsel;
> (B) The novelty and difficulty of the questions presented;
> (C) The skill requisite to perform the legal service properly;
> (D) The preclusion of other employment by counsel because of the acceptance of the action;
> (E) The customary fee charged in matters of the type involved;
> (F) Whether the fee contracted between the attorney and the client is fixed or contingent;
> (G) Any time limitations imposed by the client or the circumstances;
> (H) The amount of money, or the value of the rights, involved, and the results obtained;
> (I) The experience, ability and reputation of counsel;
> (J) The "undesirability" of the case;
> (K) The nature and length of the professional relationship between the attorney

---

[3] Among the eight factors that would require information within the insurer or the insured's possession are, ". . . (2) attempts by the insurer to induce the insured to contribute to a settlement; (3) failure of the insurer to properly investigate . . . (4) insurer's rejection of advice of its own attorney; (5) failure of the insurer to inform the insured of a compromise offer . . . (7) fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and (8) any other factors tending to establish or negate bad faith on the part of the insurer." *Pruett*, 857 P.2d at 1305-06.

- 8 -

|   |   |
|---|---|
| 1 | and the client;<br>(L) Awards in similar actions; and |
| 2 | (M) Any other matters deemed appropriate under the circumstances. |

LRCiv 54.2(c)(3). Once a party submits an itemized list of fees with sufficient detail and establishes entitlement to fees, the burden then shifts to the party challenging the fees to show that the fees are unreasonable. *See Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1286 (Ariz. App. 2007).

Here, Essex has submitted an itemized list of fees for this case, (Doc. 62 at Exhibit A), along with explanations for why the fee sought is reasonable under Local Rule 54.2. (*Id.* at 5-9). The burden therefore shifts back to Nikias to show that these fees are unreasonable. *See Nolan*, 167 P.3d at 1286. The only specific objection that Nikias makes to Essex's computation of attorneys' fees is to the 10.7 hours Essex spent on January 22 and 25, 2010 preparing a Response to Notice of Companion Case Ruling from State Court. (Doc. 63 at 6). That Response was stricken from the record because it contained supplemental briefing filed without leave of the Court. (Doc. 52). The Court agrees that the 10.7 hours used to prepare this document should not be part of the fee award. *See* LRCiv 54.2(c)(3)(M) (courts may consider "any other matters deemed appropriate" when determining reasonableness of attorneys' fees). 10.7 hours multiplied by $150 per hour[4] equals $1,605. Thus, Essex's suggested attorneys' fees award of $19,997.00 is reduced by $1,605 to $18,392.00.

Nikias has presented no other evidence that any other billing entry is unreasonable or that the billing rate is unreasonable. Nor does the Court find anything else unreasonable about Essex's fee request. Therefore, an attorneys' fees award of $18,392.00 is reasonable.

**IV.     Conclusion**

The Court finds that an attorneys' fees award of $18,392.00 is both appropriate and reasonable.

Accordingly,

---

[4] Although Essex charged different billing rates for different billing entries, Essex charged $150 for these two billing entries. (Doc. 62 at Exhibit A).

**IT IS ORDERED** that Plaintiff's Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses (Doc. 57) is granted in part and denied in part as follows: The Court awards Plaintiff $18,392.00 in attorneys' fees

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in the amount of $18,392.00, plus interest from the date of judgment until paid, in favor of the Plaintiff and against the Defendant.

DATED this 16th day of August, 2010.

James A. Teilborg
United States District Judge